UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.:    8:11-CR-00378-JSM-TGW-1

UNITED STATES OF AMERICA,
                    Plaintiff,
vs.

ERIC NIELS VELEZ,
                    Defendant.
_____/

## DEFENDANT'S SENTENCING MEMORANDUM

COMES NOW the Defendant, MAJOR ERIC NIELS VELEZ, (hereinafter "Eric"), through counsel, and respectfully moves this Honorable Court to impose a term of mandatory/minimum ten (10) years, followed by supervised release at his sentencing scheduled for Thursday, June 21, 2012 at 9:00 a.m.  A sentence at that level is warranted based upon Eric's military service; his diminished mental capacity; his crime constituted aberrant behavior; and the fact that he will be severely punished by collateral consequences.

## FACTS OF THE CASE AND ERIC'S ROLE

Between August 5, 2010 and January 28, 2011, on approximately seven (7) occasions, Eric initiated communications, over the Internet via computer, with undercover detectives who were playing the role of minor females.  On several of these occasions, Eric masturbated via webcam.

On January 30, 2012, Eric plead guilty to Counts One and Four of the Indictment, pursuant to a written plea agreement.

## ASSISTANCE TO THE GOVERNMENT

Eric, by and through undersigned counsel, contacted the AUSA in this case as well as the agent, and offered his assistance in working with the agents to further the arrest of other similar individuals.  However, the Government felt that they could do the aforementioned without the assistance of Eric.

## SENTENCING OPTIONS

As a result of the Supreme Court decision in United States v. Booker, 125 S.Ct.738 (2005), the Sentencing Guidelines are now "effectively advisory" in all cases. Id. at 757.  The result is that a District Court must now "consider Guideline ranges," but may "tailor the sentencing in light of other statutory concerns as well." Id. at 757.  Thus, under Booker, sentencing courts must treat the Guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. §3553a).  The basic mandate and overriding principle of §3553(a) requires a District Court to impose a sentence "*sufficient, but not greater than necessary*," to comply with the four purposes of sentencing set forth in §3553(a)(2):

> (a)  retribution ("to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense");
>
> (b)  deterrence ("to afford adequate deterrence to criminal conduct");
>
> (c)  incapacitation ("to protect the public from further crimes of the defendant"); and,
>
> (d)  rehabilitation ("to provide the defendant with needed educational

or vocational training, medical care, or other correctional treatment in the most effective manner").

In determining what sentence is "sufficient, but not greater than necessary" to comply with the §3553(a)(2) purposes of sentencing, the sentencing court is further directed to consider the following factors:

(1)    "The nature and circumstances of the offense and the history and characteristics of the defendant";

(2)    "The kinds of sentences available";

(3)    "The Guidelines and policy statements issued by the Sentencing Commission, including the (now non-mandatory) guideline range;

(4)    The need to avoid unwarranted sentencing disparity among defendants who have been found guilty of similar conduct; and,

(5)    The need to provide restitution where applicable. 18 U.S.C. §3553(a)(1), (a)(3)-(7).

Neither the statute itself nor Booker suggests that any one of these factors is to be given greater weight than any other factor. However, what is clear is that all of these factors are subservient to §3553(a)'s mandate to impose a sentence not greater than necessary to comply with the four purposes of sentencing. A sentencing court is further guided by 18 U.S.C. §3582, which provides that in determining whether and to what extent imprisonment is appropriate based on the §3553(a) factors, the judge is required to "recognize that imprisonment is *not* an appropriate means of promoting correction and rehabilitation" (emphasis added).

In Rita v. United States, 127 S.Ct. 2456, (S.Ct. 2007) the Supreme Court

held that courts of appeal may presume that a guideline sentence is reasonable, but stressed the presumption was "an **appellate** court presumption [that] applies only on appellate review".  By contrast, **"the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply**."  In United States v. Sachsenmaier, 491 F.3d 680 (7th Cir.2007) (post –Rita case) the court stated that the "District Courts must calculate the advisory sentencing guideline range accurately, so that they can derive whatever insight the guidelines have to offer, but ultimately they must sentence based on 18 U.S.C. § 3553(a) **without any thumb on the scale favoring a guideline sentence."**

In United States v. Santoya, 493 F.Supp.2d 1075 (E.D. Wisc.) the Court stated that under Rita "the sentencing judge is forbidden from indulging a presumption that the Guidelines sentence is the correct one."

## I.   APPLICATION OF THE STATUTORY SENTENCING FACTORS TO THE FACTS OF THIS CASE

The Defendant, Major Eric Niels Velez, through undersigned counsel, urges this Court to consider the following factors when determining what sentence is "sufficient, but not greater than necessary", to satisfy the purposes of sentencing:

1. The Offense:  Major Eric Niels Velez plead guilty to Counts One and Four of the Indictment charging him with using a computer in an attempt to persuade, induce, and entice an individual under the age of eighteen years to engage in sexual activity for which any person could be charged with a criminal offense, in violation of 18 U.S.C. § 2422(b).  He also plead guilty to Count Four charging him with attempting to transfer obscene matter to an individual who had not attained the age of 16 years by way of computer, in violation of 18

4

U.S.C. § 1470. The Presentence Report (PSR) calculates an advisory guideline imprisonment range of 210-262 months (17 years, six months-21 years, 10 months) taking into account the acceptance of responsibility and a criminal history category of I. There is a mandatory minimum of 10 years. In this case, due to numerous stresses in his life such as being in a combat war zone, Major Eric Niels Velez had unreleased anxiety during the crimes with which he was charged.

2. <u>Defendant</u>:  As is indicated in Paragraph 69 of the PSR, Eric is married to Marilyn Perez-Velez and she has expressed her support for her husband.

As is indicated in Paragraphs 70, 71 and 72 of the PSR, Eric's eighty-five year old father sexually abused Eric's younger daughter, was subsequently incarcerated and since that time Eric has had limited contact with him.

As is indicated in Paragraph 72, his father was unable to relate to him or his siblings while growing up. As is indicated in Paragraph 79 of the PSR, Eric and his wife had three children together. Their eldest daughter, Thaelis, died when she was 17 years old, in 2008, as a result of cerebral palsy. Eric and his wife have two other children, Ericka Velez age thirteen, and Niel Velez, age eleven. They all lived together until the commencement of this case.

As is indicated in Paragraph 82 of the PSR, Eric is being treated by Dr. Kenneth Frank who reported that Eric has cysts on his liver and both kidneys. Dr. Frank indicated that Eric had inherited a gene for polycystic kidney disease based on the Eric's family member medical history.

3.  <u>Defendant's Diminished Capacity</u>:  As is indicated in Paragraph 85 of the PSR, Eric was abused when he was younger.  As is indicated in Paragraph 86 of the PSR, he is currently in treatment for sexual addiction, depression and anxiety.  He is in said treatment with Dr. Randall Hicks of Newtown, Pennsylvania.

Eric also saw Dr. Gerald Cooke, a clinical and forensic psychologist, in Plymouth Meeting, Pennsylvania.  Dr. Cooke's report has been forwarded to the Probation Officer.  In Dr. Cooke's report he indicates that he interviewed and tested Eric as well as reviewed numerous reports in the case.  On Page 5 of Dr. Cooke's report he indicates that while on active duty in Afghanistan from November 2009 until November 2010, Eric's position was shelled with rockets on a daily basis.  There was also a big attack in May of 2010 that penetrated the perimeter of the base and several people were killed.  He also indicates that Eric was working twelve to eighteen hours a day, seven days a week and this added to the stress.  It is also interesting to note that on Page 6, Dr. Cooke indicates that Eric sought pastoral counseling for his addiction to pornography in 2009.  Dr. Cooke also indicates that Eric's early abuse caused him confusion about the right role of sexual conduct.

Dr. Cooke states on Page 7 that it is his opinion that Eric's masturbatory activity was a direct contributor to the current offense behavior and represents a phenomenon well described in the literature of regression to an earlier type of sexual behavior.  Sexual regression is a powerful psychological factor when it is the person's first introduction to sexuality.  On Page 7 of Dr. Cooke's

report he indicates that while in Afghanistan, there were times that Eric tried to do other things such as reading the Bible and other books in order not to go online, but he kept going back because of the addictive nature of his online behavior.  Dr. Cooke also states that the rockets were fired at the position every night and Eric was fearful that he would go to sleep and not wake up. Eric felt that if he was awake he would have a better chance to survive  He stayed awake much of the night by being on the Internet thus the online sexual behavior which also had an anxiety relief function.

It is important to note that on Page 10 of Dr. Cooke's report he indicates that Eric has an extremely low likelihood of acting out sexually toward children or anyone else, in terms of a direct contact type of offense.
Finally, Dr. Cooke addressed the issue as to whether these disorders meet the criteria for downward departure under the Federal Sentencing Guidelines.  He indicates that Eric did suffer from a reduced mental capacity consistent with the Generalized Anxiety Disorder with Obsessive-Compulsive Features and Paraphilia, NOS, with Exhibitionistic and Voyeuristic Features.  Also, as discussed in the body of the report, there is a direct link between  these disorders as well as his history of childhood sexual abuse, and the offenses. Therefore, all of these factors contributed to the commission of the offense and therefore in Dr. Cooke's opinion Eric does meet the criteria for downward departure under the Guidelines.
§ 5K2.13 of the Federal Sentencing Guidelines authorizes a departure if (1) the defendant committed the offense while suffering from " a significantly

reduced mental capacity" and this reduced capacity "contributed substantially to the commission of the crime."  Further, it states that the point of §5K2.13 is to treat with lenity those individuals whose "reduced mental capacity" contributed to the commission of a crime.  In U.S. v. Cantu, 12 F.3d 1506, 1512, 1516 (9th Cir. 1993) the court stated that the goal of the guideline §5K2.13 is lenity toward defendants whose ability to make reasoned decisions is impaired.  In U.S. v. Thompson, 315 F.3d 1071 (9th Cir. 2002)  (Berzon, J. concurring) the appellate court stated that although the district court erred in departing downward on the ground that the defendant's conduct was outside the heartland of the possession of child porn guideline, the district court should consider departure for diminished capacity because the defendant could not control his addiction to porn.  In U.S. v. Lighthall, 389 F.3d 791 (8th Cir. 2004), involving a 21 year old college student convicted of possessing and distributing porn, the appellate court held that a twenty month downward departure (from an eighty month sentence) was proper because of the obsessive-compulsive disorder which led to the defendant gathering pornography obsessively- as attested to by the unrebutted opinions of two doctors.  Noting that § 5K2.13 is targeted at offenders that demonstrate a significantly impaired ability…control behavior that the defendant knows to be wrongful.

In Karis v. Calderon,  283 F.3d 1117, 1134 (9th Cir. 2002) the court stated that there is a belief, long held by this society, that defendants that commit criminal acts that are attributable to a disadvantaged background or to

emotional and mental problems may be less culpable than defendants who have no such excuse.  In U.S. v. Silleg, 311 F.3d 557 (2d Cir. 2002) the appellate court stated that the district court has authority to downward depart on a porn case where the defendant has diminished capacity and cannot control his addiction to porn.

In U.S. v. Tanasi, 2003 WL 328303 (S.D.N.Y. Feb. 6, 2003) (unpub.) where the defendant was convicted of possession and sending child porn by computer to an undercover agent pretending to be thirteen years old, the appellate court held that he was entitled to a departure from a 33-41 month guideline to nine months because of diminished capacity given to obsessive and compulsive behavior and could not control his conduct and, also, where there was no evidence that he was a sexual predator or ever was involved sexually with a child.

In this case, Major Eric Niels Velez led an unblemished life with the exception of this particular case.  His addiction to pornography is clearly recognized by the literature and the psychologists and psychiatrists.  Under the aforementioned case law and  because he has never wrongfully touched a minor nor is it likely that he ever will, and because of Dr. Cooke's testing, examination and diagnosis, Eric should be granted a departure on the results of diminished mental capacity  under § 5K2.13.

4. Education:  As is indicated in Paragraph 88 of the PSR, Eric graduated from the University of Puerto Rico with a Bachelor of Arts degree in Criminal Justice and as indicated in Paragraph 89 he obtained his Master of Arts degree

in Education from the Inter American University of Puerto Rico.  As is stated in Paragraph 90, he enrolled in postgraduate studies at LaSalle University in Philadelphia, Pennsylvania and earned twelve credit hours as a part-time student, majoring in marriage and family therapy.  He also completed the Police Academies in Puerto Rico and Philadelphia, Pennsylvania.

5. <u>Military</u>: As is indicated in Paragraph 92 of the PSR, Eric joined the U.S. Army Reserves in 1992 and was called to active duty on three occasions between July 25, 1997 and November 21, 1997; between July 15, 2002 and May 3, 2003; and between November 7, 2009 and November 22, 2010.  He served in Afghanistan, Germany, Nicaragua, and Bosnia.

Eric's complete military records were forwarded to the probation officer. His records demonstrate that he had an outstanding career while serving his country with nothing but glowing reviews and was on the fast track to becoming a Lieutenant Colonel.  Also forwarded to the Probation Officer was a list of Eric's medals and ribbons consisting of the following Joint Service Commendation Medal, two Army Commendation Medals, the Army Achievement Medal, the Army Reserve Component Achievement Medal and the National Defense Service Medal, the Armed Forces Expeditionary Medal, the Humanitarian Service Medal, the Armed Forces Reserve Medal (with "M" device) Mobilization) the Army Service Ribbon, the Army Reserve Overseas Training Ribbon three times, the NATO Ribbon and the NATO Ribbon for Afghanistan.  In <u>Kimbrough v. U.S.</u>, 128 S.Ct. 558 (2007), a conspiracy to distribute crack and use of a gun, the appellate court held that the district court

was not unreasonable in giving a below-guideline sentence to the minimum mandatory of fifteen years and stated that the defendant had "had served in combat during Operation Desert Storm and received an honorable discharge from the Marine Corps."  In U.S. v. Howe, 543 F.3d 128 (3rd Cir. 2008), where the defendant was convicted of mail fraud with a loss of $150,000.00 and guidelines of 18-24 months, the appellate court held that the sentence of probation with three months home detention was not unreasonable in part because of Howe's twenty years of military service followed by an honorable discharge.

Even pre-Booker, courts departed downward for extraordinary military service.   In In U.S. Pipich, 688 F.Supp. 191 (D.Md. 1988), where the defendant was convicted of mail theft but had an extraordinary military record, the appellate court stated that this warrants departure to probation. They further stated that the defendant was in the Marines from 1968 to and served in combat in Vietnam for one year.  He received over 45 awards of the Air Medal, including one special award for heroism in connection with the extraction of a reconnaissance team that was surrounded by North Vietnamese forces.  In United States v. Claudio, CR.No. 9244 (D.Ore. October 1993), the court departed downward because of the defendant's extraordinary military service.  Similarly, U.S. v. Leigh, Cr 91-96 FR (D.Ore.) the judge granted a substantial downward departure in a bank robbery case based in part on prior military service.

11

Therefore, because of Major Eric Niels Velez' distinguished military service to his country, he is entitled to a downward departure or variance.

6. <u>Education</u>:  As has already been discussed, Eric is a member of the United States Army Reserve.  He also worked as  a counselor  at the Tree of Life Hope Behavioral Services between 2008 and 2011.

He was also employed at the Defense Logistics Agency in Philadelphia, Pennsylvania between 2004 and 2011.  Between 2001 and 2004 he was employed as a police officer for the Philadelphia Police Department.  Between 2000 and 2001 he was employed as a social worker for the Department of Human  Services and the Council of Spanish Speaking Organization.

Eric has always worked hard to support himself and his family.

7. <u>The Defendant's Crime Constituted Aberrant Behavior:</u>  In <u>U.S. v. Garcia</u>, 182 F.3d 1165, 1176 (10th Cir. 1999), the court stated that even though the plan was "carefully planned" it did not preclude a finding of aberrant behavior because the correct focus is not on the number of discreet acts undertaken by the defendant, but rather on the aberrational character of the conduct.  In <u>U.S. v. Iaconetti</u>, 59 F.Supp.2d 139 (D.Mass. 1999), a conspiracy to possess with intent to distribute cocaine case, and the defendant had no prior record, the court decided that he was entitled to an eleven—level departure from the Sentencing Guidelines (from level 25 to level 14) based on "single acts of aberrant behavior" –gambling debts to a loan shark caused by defendant's gambling compulsion.

There is no question that the acts for which Eric is charged were an aberration from an otherwise unblemished and law abiding life.

8. <u>Punishment By Collateral Consequences:</u>   When the President of the United States commuted the thirty-month sentence of Lewis "Scooter" Libby on July 2, 2007, he stated that "the prison sentence given to Mr. Libby is excessive. Therefore, I am commuting the portion of Mr. Libby's sentence that required him to spend 30 months in prison.  My decision to commute his prison sentence leaves in place a harsh punishment for Mr. Libby.  The reputation he gained through his years of public service and professional work in the legal community is forever damaged.   His wife and young children have also suffered immensely.  He will remain on probation.  The consequences of his felony conviction on his former life as a lawyer, public servant, and private citizen will be long-lasting."

Likewise, not only will Eric be incarcerated for a minimum of ten years, he will be discharged from the Army, and has already lost his other two jobs. His family will suffer immensely and he will lose his good name.

In <u>U.S. v. Garate</u>, 543 F.3d 1026, 1028 (8th Cir. 2008), the appellate court upheld that it was appropriate for the district court to consider, under § 3553(a), the "lasting effects of being required to register as a sexual offender."  In <u>U.S. v. Pauley</u>, 511 F.3d 468 (4th Cir. 2007), a possession of child porn case, the appellate court upheld a downward variance to 42 months from 78-97 months in part because "the district court also found that Pauley warranted a lower sentence because he lost his teaching certificate and his

state pension as a result of his conduct."   Consideration of these facts is consistent with 3553(a)'s directive that the sentence reflect the need for just punishment and adequate deterrent.

Finally, in <u>U.S. v. Baird</u>, 2008 WL 151258, (D.Neb. Jan. 11, 2008) (unpub.) a child porn case where the guidelines called for 41-57 months, the court imposed a sentence of 24 months stating that "the defendant has already suffered serious consequences as a result of his actions.   A conviction for possession of child pornography carries considerable stigma.   Baird has lost his military career, has a felony conviction on his record, and will have to register as a sex offender."

## <u>CONCLUSION</u>

There is never a good time to be sentenced.   For Eric, this is the worst of times. He has a significant health problem, he is an outstanding father, husband, friend and spiritual person to all those who know and love him.   He has always been a good provider for his family and is known for his unselfish good deeds as evidenced by the letters attached to the PSR.   The commitment he has shown to his family and to his country is an indication of his extraordinary character.   He has shown remorse *ab initio.*   He has accepted full responsibility for his crime, is very remorseful and embarrassed by this case.   Although his cooperation did not warrant a §5K1.1 motion, he offered to meet with the agents and is more than willing to help the Government.   He has never shunned responsibility and stands ready for sentencing.

A sentence of ten years is more than necessary to comply with the purposes of the 3553 factors.   A sentence of ten years would comply with all of these factors and is

"sufficient, but not greater than necessary" to satisfy the sentencing directives.  We ask you, Judge Moody, for mercy.

Respectfully submitted.

/s/  Jeffrey M. Voluck                       .
Jeffrey M. Voluck

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed with the Clerk of the Court using CM/ECF this 8th day of June 2012 and electronically to all Parties of Record.

VOLUCK & MERLINO, P.L.
Counsel for Defendant
101 N. E. Third Avenue, Suite 1430
Fort Lauderdale, Florida 33301
Telephone:  954-467-8989
Facsimile:  954-745-7698
E-Mail  :  acquit00@bellsouth.net

By:/s/ Jeffrey M. Voluck                       .
Jeffrey M. Voluck
Florida Bar.: 0113750